# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

CASIMIR P. GRIFFIN,

    Plaintiff,

    v.                                        2:19-CV-132

TAMMY JERNIGAN,

    Defendant.

## ORDER

This is a pro-se action for copyright infringement, breach of contract, and various tort claims. See generally Dkt. No. 2. The only defendant successfully served after frivolity review—Defendant Tammy Jernigan—failed to answer, and so, pursuant to Plaintiff Casimir Griffin's motion, the Clerk entered default. Dkt. No. 22. Plaintiff moved for default judgment and—at the Court's instruction, dkt. no. 25 at 3—filed a brief in support of the damages he seeks. Dkt. Nos. 23, 32. On September 21, 2022, the Court held a hearing to consider any evidence of damages. Notice was provided to Plaintiff who, given his location out of town, requested to proceed telephonically. The Court granted his request. Dkt. No. 35. So too, the Court directed the U.S. Marshal to serve Defendant Jernigan at the address at which she

was originally found.   Dkt. No. 35.   Defendant had left that address and could not be located.   Dkt. No. 36.   For the reasons discussed below, Plaintiff's motion for default judgment, dkt. no. 23, is **GRANTED.**   Defendant is **ORDERED** to pay $100 in nominal damages and $10,000 in statutory damages to Plaintiff, as well as return the subject manuscripts and **DISCONTINUE** any and all efforts to market or profit from Plaintiff's works.

## BACKGROUND

*Factual Background*

According to the Complaint, in 2016, Plaintiff began discussing a book publishing deal with Defendant. Dkt. No. 2 at 6.   Defendant owned a company called "Creative Inspirations Imprint."   Id.   Her partner, Henry Cambell, ostensibly owned a company called "Harddrive Publishing Imprint." Id.  The publishing contract required Plaintiff to provide a manuscript every six months until all five books were released—calling for the first book to be released in 2018.  Id. at 6-7.  The Complaint alleges that Plaintiff provided three books up front (two via Gmail and one by regular mail).   Id. at 6.  Plaintiff was also asked by Defendant to do a book cover—which he did, posting the cover to Facebook and Instagram.  Id.

The Complaint further alleges that problems started when there were delays in publishing the first book.   Id. at 7.

Defendant said she had decided to re-edit the book, but weeks went by without Plaintiff receiving the edits. Id. Defendant assured Plaintiff that the editing was done and that he would soon receive the edited version—but it didn't come. Id. Plaintiff called Defendant, who said the manuscript had been returned to her because he had not picked it up, but she assured him she would re-send it if he would pay for the postage. Id. Plaintiff became suspicious, and, after investigating, determined that Defendant and Cambell were "extremely new" to the publishing business and that "Hard Drive Publishing" was not a real company. Id. Plaintiff and Defendant agreed that Defendant would not publish any of the books and would instead return the manuscripts and erase her copies. Id.

Shortly after, Plaintiff was incarcerated for probation violations. Id. The Complaint alleges that during his incarceration, Plaintiff got back in contact with Defendant—who now agreed that Cambell was "suspect" and confirmed that she had cut ties with him. Id. at 7-8. Defendant said that she had "invested too much into [Plaintiff's] book to just walk away[.]" Id. at 8. Defendant wanted payment for the book cover (including an alternate cover she had apparently made) and editing costs before she would return the manuscripts. Id. Plaintiff "question[ed] [her] motives" and warned her that he had copyrighted

all of his works.  Id.  Defendant "got mad" and "told [Plaintiff] to call her back with a good address that she [could] send the manuscripts to," insisting that "[they] were done."  Id.  A similar call took place several weeks later, this time with Plaintiff's sister on the line, recording the call.  Id.

The Complaint further alleges that after Plaintiff was released, he got back in touch with Defendant.  Id.  Defendant "refused to walk away from the situation without publishing the book," insisting she had "wasted all she had on the project" and stating that the book was "ready to be released on Amazon."  Id. "She kept refusing to send the manuscripts" and even "emailed [Plaintiff] a new contract via Google" in January 2018.  Id. at 8-9.  The new contract called for the profits to be split "50/50." Id. at 9.

For reasons he does not explain in the Complaint, Plaintiff signed and mailed the new contract back to Defendant.  Id.  The Complaint alleges that the book, "Project Mayhem," was published and listed on Amazon Kindle in May 2018 and published in paper two months later, but Plaintiff never received any money from Defendant.  Id. at 9-10.  Defendant apparently told Plaintiff that he would receive his money in a Pay-Pal account, but he never did. Id. at 9.  When Plaintiff confronted her about the money, Defendant told Plaintiff to "take [her] to court"; Defendant said she had

done all the promotion herself, so she was "entitled to all the funds for her promotion work[.]"  Id.  Defendant apparently told Plaintiff that "she won't pay [Plaintiff] any funds for any of [his] book sales unless she is 100% sure that the sales generated are from [his] promotions[.]"  Id.

The complaint does not clearly say whether Plaintiff rescinded the licensing agreement at this point—only that Defendant refused to pay Plaintiff what he was due under the licensing agreement, see dkt. no. 2 at 10—but Plaintiff clarified in his brief regarding damages that he did tell "[Defendant] to stop selling his book, Project Mayhem, and to take it down from all sites."  Dkt. No. 32 at 3.[1]  Defendant did not, instead "continu[ing] to sell [his] book[.]"  Id.

*Procedural Background*

Plaintiff filed this lawsuit, mainly alleging that Defendant infringed on his "Project Mayhem" copyright and breached their

---

[1] Since that assertion is consistent with the allegations in the complaint itself, see dkt. no. 2 at 7 (alleging that the parties "agreed [Defendant] would not publish any of [Plaintiff's] books and she would mail [ ] back everything"), and courts generally construe *pro se* pleadings "liberally," see Dempsey v. Elmore, No. 407-141, 2008 WL 4491475, at *1 (S.D. Ga. Oct. 3, 2008), it would be inappropriate to refuse to consider Plaintiff's assertion that he rescinded the publishing contract.

publishing contract. Dkt. No. 2 at 10.[2] Per the Court's order on frivolity review, Plaintiff also asserted claims for fraud, conspiracy, negligence, and "trespass to property" (better understood as conversion). Dkt. No. 12 at 2.

Plaintiff also sued various other defendants alleging a host of other claims. See generally Dkt. No. 2. Those defendants included Google, Amazon (as well as its CEO, Jeff Bezos), Facebook, Instagram, and LinkedIn, as well as fifty Jane and John Does (with an unspecified relationship to the case), dkt. no. 2 at 1—all of whom were dismissed on frivolity review, dkt. no. 10 at 8-9; dkt. no. 12. The other claims—in brief—included various constitutional rights, "abuse of process," mail, wire, and bank fraud, "strict liability," defamation, some sort of qui tam suit, and "taxes owed . . . per 26 U.S.C. § 165." See Dkt. No. 2 at 11. Those were also dismissed on frivolity review. Dkt. No. 10 at 9-11; Dkt. No. 12. Attempts to serve the remaining Defendant, Henry Cambell, were unsuccessful, dkt. nos. 14 and 15, and he has been dismissed without prejudice, dkt. nos. 28, 31.

Process *was* served on Defendant, dkt. no. 14, and her deadline to answer passed on July 10, 2021. A little over four months after

---

[2] Plaintiff originally filed suit in the Southern District of New York, but the case was transferred to this court based on venue requirements. Dkt. No. 5.

that, the Court granted Plaintiff's motion to enter default against Defendant.  Dkt. No. 21; see also Dkt. No. 22.

Plaintiff promptly moved to enter default judgment.  Dkt. No. 23.  Finding that the claims here were not for a "sum certain," dkt. no. 25 at 1 & n.1, the Court ordered Plaintiff to follow up with a filing "explaining and providing proof of the damages he claims," id. at 3; see also dkt. no. 32.  The Court denied Plaintiff's request for subpoenas to discover information relevant to his damages claims, finding that his requests were "inappropriately broad, that [he had] not demonstrated a clear need for the requested materials, and [that it was] apparent some of the information he seeks could be obtained through other means." See Dkt. No. 29 at 4.  Plaintiff moved for reconsideration, see dkt. no. 33, but never proposed a narrower subpoena.

## LEGAL STANDARD

"When default has been entered on a claim that is not for a 'sum certain' or a 'sum that can be made certain by computation,' the party seeking the entry of default judgment 'must apply [for it] to the court.'"  Griffin v. Jernigan, No. 2:19-CV-132, 2022 WL 1151281, at *1 (S.D. Ga. Mar. 24, 2022) (quoting Fed. R. Civ. P. 55(b)(1), (2)) (citations omitted).

"In a case seeking damages, that analysis proceeds in two parts. *First*, final judgment may be entered if the pleadings state

a substantive cause of action and contain a sufficient basis to support the relief sought." Id. (emphasis in original) (citing Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007)). To that end, "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact [and] is concluded on those facts by the judgment," but he "is not held to admit facts that are not well-pleaded or to admit conclusions of law." Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). Second, "if the plaintiff seeks damages, then the court 'must make certain' that there is a legitimate basis for any damage award it enters." Griffin, 2022 WL 1151281, at *1 (quoting Whitman v. Hinton, No. 4:18-cv-101, 2019 WL 3776472, at *2 (S.D. Ga. Aug. 9, 2019)). "Unlike well-pleaded allegations of fact, allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." Id. (quoting Faria v. Lima Inv. Sols., LLC, No. 6:19-cv-535, 2019 WL 3044033, at *2 (M.D. Fla. June 24, 2019), report and recommendation adopted, 2019 WL 3037796 (July 11, 2019)).

## DISCUSSION

Plaintiff is entitled to a default judgment. His substantive allegations—which, in this posture, the Court must credit as true— state a cause of action. As for the remedy, Plaintiff has failed

to present competent proof of the *amount* of damages—but he is nonetheless entitled to nominal damages, statutory damages, and an injunction.

**I. Plaintiff is entitled to default judgment.**

*A. Copyright Infringement*

Copyright infringement claims have two elements: the plaintiff must possess a valid copyright, and the defendant must have copied the "[original] constituent elements of the copyrighted work[.]" Calhoun v. Lillenas Publ'ng, 298 F.3d 1228, 1232 (11th Cir. 2002) (quoting Feist v. Pub'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

Plaintiff alleges—and the Court must take as true for present purposes—that he has a valid copyright in the book "Project Mayhem." Dkt. No. 2 at 8.[3] And while Plaintiff does not elaborate on the infringement claim in his request for a default judgment, it is clear enough that the claim derives from Defendant publishing and (potentially) profiting from the copyrighted work. Id. at 10. While Defendant initially had permission to do that, Plaintiff alleges that he rescinded that licensing agreement when Defendant failed to return his manuscripts or, later on, pay his share of the royalties—and yet she persisted. See Dkt. No. 2 at 7 (alleging

---

[3] Plaintiff also suggests that he has copyrights on the other works that he delivered to Defendant, but he does not identify any infringing conduct regarding those copyrights.

the parties "agreed [Defendant] would not publish any of [Plaintiff's] books and she would mail [ ] back everything"); Dkt. No. 32 at 3 (Plaintiff told Defendant "to stop selling his book, Project Mayhem, and to take it down from all the sites" but she did not).

Crediting Plaintiff's allegations in this default posture, that is enough to state a claim for copyright infringement against Defendant. See Jacob Maxwell, Inc. v. Veeck, 110 F.3d 749, 753 (11th Cir. 1997) ("once a non-breaching party to an express copyright license obtains and exercises a right of rescission by virtue of a material breach of the agreement, any further distribution of the copyrighted material would constitute infringement" (emphasis omitted) (quoting Fosson v. Palace (Waterland), Ltd., 78 F.3d 1448, 1455 (9th Cir. 1996))); see also 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 10.15[A], at 10–125–26 (1996) ("Upon such rescission, the assignment or license is terminated and the copyright proprietor may hold his former grantee liable as an infringer for subsequent use of the work.").

B. *Breach of Contract*

To show a breach of contract, Plaintiff must show a breach, damages, and a right to complain about the breach. Norton v. Budget Rent A Car Sys., Inc., 705 S.E.2d 305, 306 (Ga. Ct. App. 2010). The core of Plaintiff's complaint, of course, is that

Defendant never paid him the proceeds to which he was entitled under the publishing agreement. Dkt. No. 2 at 9-10. Thus, the allegations here track the basic requirements for a breach of contract, and Defendant has alleged a prima facie case of a breach of contract.[4]

*C. Fraud*

So too, Plaintiff pleads enough facts for a fraud claim. "The five elements of fraud . . . are (1) false representation made by the defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; (5) damage to the plaintiff." Johnson v. GAPVT Motors, Inc., 663 S.E.2d 779, 783 (Ga. Ct. App. 2008) (quoting City Dodge v. Gardner, 208 S.E.2d 794, 797 n.1 (Ga. 1974)). To this end, Plaintiff alleges that Defendant misrepresented her and Cambell's publishing experience, and the credentials of the publishing company, for the purpose of inducing Plaintiff to enter the publishing contract. Dkt. No. 2 at 6-7. As a result, the complaint alleges, Plaintiff *did* enter

---

[4] Plaintiff alleges that he had a contract with Defendant to publish five of his books, but he does not appear to assert a claim for the breach of that contract, later disclaiming that contract as "invalid" and "void." Dkt. No. 2 at 7-8. In any event, Plaintiff does not identify any damages from that breach, see id., so he would not be entitled to default judgment on that contract regardless.

the agreement and was not paid for his work on the books.  Id. at 6, 9-10.  Thus, Plaintiff has pled a facially viable fraud claim.

D. Conspiracy

Since Plaintiff is entitled to default judgment on his fraud claim and has alleged that Defendant and Cambell conspired to commit the fraud, dkt. no. 2 at 10, he has also stated a cause of action for civil conspiracy.  Mustaqeem-Graydon v. SunTrust Bank, 573 S.E.2d 455, 461 (Ga. Ct. App. 2002) ("To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." (citing Savannah Coll. of Art & Design, Inc. v. Sch. of Visual Arts of Savannah, Inc., 464 S.E.2d 895, 896 (Ga. Ct. App. 1995))).

E. Conversion

So too, Plaintiff's allegation that Defendant took his copyrighted works and—having failed to publish them as agreed—refused to return them, dkt. no. 2 at 8, states a claim for conversion.  Trey Inman & Assocs. v. Bank of Am., N.A., 702 S.E.2d 711, 716 (Ga. Ct. App. 2010) ("Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his

rights." (quoting <u>Md. Cas. Ins. Co. v. Welchel</u>, 356 S.E.2d 877, 880 (Ga. 1987))).[5]

## II. Plaintiff has not proven any compensatory damages, but he is entitled to nominal and statutory damages.

Having determined that default judgment must be entered, the Court "turns to the question of the type and amount of damages." <u>Whitman</u>, 2019 WL 3776472, at *2. As discussed above, "[e]ven where the Court finds that default judgment is appropriate, it must make certain 'that there is a legitimate basis for any damage award it enters.'" <u>Id.</u> (alteration accepted) (quoting <u>Anheuser-Busch, Inc. v. Philpot</u>, 317 F.3d 1264, 1266 (11th Cir. 2003)); <u>see also</u> <u>Faria</u>, 2019 WL 3044033, at *2 ("Unlike well-pleaded allegations of fact, allegations relating to the amount of damages are not admitted by

---

[5] The Court declines, however, to enter judgment on Plaintiff's negligence claim. The basic elements of any negligence claim are "(1) a duty . . . requiring the actor to conform to a certain standard of conduct . . . (2) a failure . . . to conform to the standard required; (3) a reasonabl[y] close causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of [another.]" <u>Marquis Towers, Inc. v. Highland Grp.</u>, 593 S.E.2d 903, 906 (Ga. Ct. App. 2004). Plaintiff's complaint, however, seems to accuse Defendant of intentional torts—not negligence. <u>See</u> Dkt. No. 2 at 10. The frivolity review allowed the negligence claim to proceed against Defendant because she "failed to use reasonable care by bringing Mr. Cambell in on the project even though he did not actually own a publishing company," dkt. no. 10 at 8—but the only references to negligent hiring and supervision in the complaint are directed at Google, Amazon, Instagram, and LinkedIn for failure to screen whether [Defendant] and Cambell's companies "were legal entities[.]" Dkt. No. 2 at 10.

virtue of default; rather, the court must determine both the amount and character of damages.").

A. *Compensatory Damages*

Plaintiff has not offered competent evidence showing the amount of his damages.  See generally Dkt. No. 32.  Despite alleging that Defendant has failed to pay Plaintiff's share of royalties or otherwise return his books, Plaintiff offers no concrete evidence as to the amount of damages.  Id. at 5-6.  He does not identify (even approximately) how many books were sold, what the sales price was,[6] what comparable books might expect to earn on the market, or even what his own costs in producing the works might have been.  See id.

The Court, therefore, has no legitimate basis for anything more than nominal damages on Plaintiff's contract and tort claims. See, e.g., McCaa v. Edwards, No. 7:12-CV-2688, 2015 WL 4459398, at *2 (N.D. Ala. July 21, 2015) (granting nominal damages where liability had been found but no damages proven); Int'l Auto Logistics, LLC v. Vehicle Processing Ctr. of Fayetteville, Inc., No. 2:16-CV-10, 2017 WL 149815, at *9 (S.D. Ga. Jan. 13, 2017) (same); see also Brock v. King, 629 S.E.2d 829, 834-35 (Ga. Ct. App. 2006) ("In every breach of contract the injured party has a

---

[6] At the damages hearing, Plaintiff did relay that he was aware that some books had sold and that he bought one for approximately $6.00.

right to damages, and if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action." (internal quotation marks omitted)); Holmes v. Drucker, 411 S.E.2d 728, 730 (Ga. Ct. App. 1991) ("Where there is fraud or breach of a legal or private duty accompanied by any damage, the law gives a right to recover . . . . [N]ominal damages[ may be] given as compensation for injury done."); Callahan v. Panfel, 395 S.E.2d 80, 82 (Ga. Ct. App. 1990) (holding nominal damages were proper in a case alleging conversion of an earnest money deposit).

Georgia law holds that "the sum awarded as nominal damages may, according to circumstances, vary almost indefinitely"—but $100 is a common award. Int'l Auto Logistics, 2017 WL 149815, at *9 (quoting First Fed. Sav. & Loan Ass'n of Atlanta v. White, 309 S.E.2d 858, 859 (Ga. Ct. App. 1983)). In the absence of proof as to the *amount* of Plaintiff's damages, the Court hereby **ORDERS** that Defendant Tammy Jernigan pay $100 in nominal damages for Plaintiff's breach of contract, fraud, conspiracy, and conversion claims.

*B. Statutory Damages*

For purposes of the copyright infringement claim, though, Plaintiff asks the Court to award the maximum amount of statutory damages, $150,000. Dkt. No. 32 at 4-5 (citing 17 U.S.C. § 504(c)

("the copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action")).  "The award of statutory damages is especially fitting in the default judgment context," since there will generally have been no discovery in the case. Evony, LLC v. Holland, No. 2:11-cv-00064, 2011 WL 1230405, at *3 (W.D. Pa. Mar. 31, 2011).

Courts have "wide discretion in determining the amount of statutory damages to be awarded[.]"  Harris v. Emus Recs. Corp., 734 F.2d 1329, 1335 (9th Cir. 1984); cf. Gladys Music v. Ed Smith Prod., Ltd., No. 94-CV-429, 1994 WL 705265, at *3-4 (N.D.N.Y. Dec. 6, 1994).  Indeed, where an infringement is willful, the court has discretion to increase the statutory maximum to $150,000.  17 U.S.C. § 504(c)(2).  Plaintiff's assertion that Defendant knowingly ignored his rescission of the licensing agreement and continued to publish and profit from his book, dkt. no. 32 at 3, suffices to show willfulness.  See Yellow Pages Photos, Inc. v. Ziplocal, LP, 795 F.3d 1255, 1271-72 (11th Cir. 2015) ("willfulness under the Copyright Act 'means that the defendant knows his actions constitute an infringement; the actions need not have been malicious'" if the defendant "reckless[ly] disregard[s]" the possibility that he is infringing (internal quotation marks omitted) (quoting Cable/Home Commc'n Corp. v. Network Prods.,

16

Inc., 902 F.2d 829, 851 (11th Cir. 1990); Graper v. Mid-Continent
Cas. Co., 756 F.3d 388, 394-95 & n.7 (5th Cir. 2014))); cf. Peer
Int'l Corp. v. Pausa Recs., Inc., 909 F.2d 1332, 1336 (9th Cir.
1990). Indeed, default itself is often enough to show willfulness.
See, e.g., Broadcast Music, Inc. v. Spring Mount Area Bavarian
Resort, Ltd., 555 F. Supp. 2d 537, 542 (E.D. Pa. 2008); Sony Music
Ent. v. Cassette Prod., Inc., No. CV 92-4494, 1996 WL 673158, at
*5 (D.N.J. Sept. 30, 1996); Hounddog Prods., LLC v. Empire Film
Grp., Inc., 826 F. Supp. 2d 619, 631 (S.D.N.Y. 2011).

    In deciding the proper amount of statutory damages, courts
typically consider three factors:

    (1) any expenses saved or profits gained in connection with
    the infringement;

    (2) any revenue lost by the copyright holder; and

    (3) whether the infringement was willful and knowing as
    opposed to accidental or innocent.

See, e.g., Broadcast Music, Inc. v. Golden Horse Inn Corp., 709 F.
Supp. 580, 581 (E.D. Pa. 1989); Universal City Studios, Inc. v.
Ahmed, No. CV 93-3266, 1994 WL 185622, at *3 (E.D. Pa. May 13,
1994); Adventure Creative Grp., Inc. v. CVSL, Inc., 412 F. Supp.
3d 1065, 1072 (D. Minn. 2019); see also Gladys Music, 1994 WL
705265, at *3-4 (considering the public interest in ensuring the
integrity of copyright laws, as well). "In weighing these factors,

most courts . . . have focused largely on the element of intent," since information about profits and losses can be hard to come by when the defendant does not show up to defend the case, "and the per infringement award tends [ ] to escalate[ ] in direct proportion to the blameworthiness of the infringing conduct." Original Appalachian Artworks, Inc. v. J.F. Reicher, Inc., 658 F. Supp. 458, 465 (E.D. Pa. 1987) (quotation omitted).

Still, it stands to reason that statutory damages "should [generally] bear *some* relation to actual damages[.]" Ass'n of Am. Med. Colls. v. Mikaelian, No. CV 83-2745, 1986 WL 332, at *16 (E.D. Pa. Mar. 18, 1986) (citing RSO Records, Inc. v. Peri, 596 F. Supp. 849, 862 (S.D.N.Y. 1984)); cf. DeYoung v. Royce Wear, LLC, No. 1:20-CV-549, 2021 WL 5496386, at *5 (W.D. Mich. Mar. 29, 2021) ("there must be some tie to economic reality"). And a maximum award is typically reserved for "egregious circumstances." Granger v. One Call Lender Servs., LLC, No. CV 10-3442, 2012 WL 3065271, at *3 (E.D. Pa. July 26, 2012) (quoting Joe Hand Promotions v. Burg's Lounge, 955 F. Supp. 42, 44 (E.D. Pa. 1997)); cf. AF Holdings LLC v. Bossard, 976 F. Supp. 2d 927, 930 (W.D. Mich. 2013) ("[M]erely proving willfulness does not automatically entitle a copyright holder to the statutory maximum. The Court retains broad discretion to determine an appropriate damages figure in each case.").

18

Because there is no evidence regarding the amount of damages suffered, the Court cannot enter a maximum or near-maximum award. Again, there is no evidence in the record about how many books Defendant may have sold, what the profits might be, any lost goodwill or misattribution of credit Plaintiff might suffer, or even what Plaintiff's production costs were.   Of course, as Plaintiff points out, that fact does not necessarily preclude granting a large award of statutory damages; after all, Defendant's failure to answer means Plaintiff has had no real opportunity to engage in discovery.  See Dkt. No. 32 at 5 (collecting cases).  In that same vein, Plaintiff's only attempt to gather relevant information from other sources was insupportably broad, dkt. nos. 29, 33, and he did not propose another.  All that being so, it hardly seems a sound use of discretion to blindly impose potentially ruinous liability.

Nonetheless, the default judgment here creates "the need to compensate [Plaintiff] for his losses and to deter . . . others from violating the copyright laws in the future." Granger, 2012 WL 3065271, at *3 (quoting Palmer v. Slaughter, No. CV 99-899-GMS, 2000 WL 1010261, at *4 (D. Del. July 13, 2000)).  Courts awarding statutory damages pursuant to a default judgment have granted awards across the spectrum.  See, e.g., DeYoung, 2021 WL 5496386, at *6 (cataloging statutory damages awards ranging from $5,000 to

$50,000); Granger, 2012 WL 3065271, at *3 (awarding $12,000 for a
single violation); Universal City Studios, 1994 WL 185622, at *4
(awarding the then-$20,000 maximum under 17 U.S.C. § 502(c)(1));
Curtis v. Illumination Arts, Inc., 33 F. Supp. 3d 1200, 1218-20
(W.D. Wash. 2014) (awarding $50,000 to authors of children's books
against a book publisher in breach of publishing agreement); RMC
Pub., Inc. v. Doulous PM Training, No. 3:07-CV-2139, 2010 WL
742575, at *4-5 (N.D. Tex. Mar. 3, 2010) (awarding $100,000); Teri
Woods Pub. LLC v. Williams, No. 12-4854, 2013 WL 6179182, at *3-4
(E.D. Pa. Nov. 25, 2013) (awarding the full $150,000); VMG Salsoul
LLC v. Birdsong, No. 11-10559, 2013 WL 12138715, at *4-5 (C.D.
Cal. Sep. 23, 2013) (same); Hounddog Prods., LLC, 826 F. Supp. 2d
at 624-25, 632 (same); Adventure Creative Grp., 412 F. Supp. 3d at
1072 (awarding the full $150,000 for each of two infringements).

The infringement in this case is willful—but it only became
that (and, indeed, infringement at all) toward the end of this
transaction, when Plaintiff terminated the agreement but Defendant
refused to stop marketing the book.  The information available
suggests "that [Defendant] has continued [her] infringement," and
that indeed urges a significant award is appropriate.  Granger,
2012 WL 3065271, at *3; cf. Teri Woods Pub., 2013 WL 6179182, at
*3.  So, while Defendant's refusal to either pay Plaintiff or
return the manuscripts is troubling, the Court has no way of

knowing whether Defendant has profited to any degree following the rescission of the licensing agreement. See, e.g., Granger, 2012 WL 3065271, at *3 (relying on "[the] lack of evidence of any actual loss to [the p]laintiff"); cf. Curtis, 33 F. Supp. 3d at 1218 (awarding $50,000 per violation where "Plaintiffs' evidence with respect to [profits and losses was] patchy at best"). Moreover, the Court can, and, as discussed below, does order Defendant to return the manuscripts and stop marketing "Project Mayhem"—which disposes of the more verifiably-egregious aspects of the infringement here.

All that being so, the Court **ORDERS** Defendant Tammy Jernigan to pay $10,000 in statutory damages. Absent any indication of the harm to Plaintiff, or the benefit to Defendant, the Court simply cannot award more. See, e.g., id. at 1217-18 (awarding $50,000 statutory damages for infringement flowing from a breached publishing agreement where the plaintiff demonstrated thousands of dollars in lost royalties and the defendant had at least some verifiable sales of the books). Judging by the fact that Defendant's publishing enterprise appears to be small, dkt. no. 2 at 6, this amount should suffice to deter Defendant and the public in general from committing this sort of infringement in the future.

**Plaintiff is also entitled to an injunction ordering the return of his manuscripts and prohibiting further exploitation of "Project Mayhem."**

Having entered default judgment on Plaintiff's copyright claim, it is also appropriate to order Defendant to return Plaintiff's manuscripts and discontinue any and all efforts to market or profit from these works. See 17 U.S.C. § 502(a) (the court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright"); Dkt. No. 23 at 5 (requesting other appropriate relief).

"Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has already suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships favors an equitable remedy; and (4) [the] issuance of an injunction is in the public's interest." Cadence Design Sys., Inc. v. Pounce Consulting, Inc., No. 17-CV-04732, 2019 WL 1768619, at *10 (N.D. Cal. Apr. 1, 2019) (quoting eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391-92 (2006)).

Here, Defendant's infringement on Plaintiff's copyright includes essentially a theft of the copyrighted material, itself. That is an irreparable injury for which there is no adequate remedy. See e.g., UMG Recordings, Inc. v. Blake, No. 5:06-cv-00120-BR, 2007 WL 1853956, at *3 (E.D.N.C. June 26, 2007)

("[i]rreparable injury is presumed when a plaintiff succeeds on the merits" of an infringement claim); see also Broad. Music, Inc. v. Prana Hosp., Inc., 158 F. Supp. 3d 184, 195 (S.D.N.Y. 2016) ("monetary damages [are] inadequate where the defendant poses a significant threat of future infringement" (citation omitted)); Cadence Design Sys., 2019 WL 1768619, at *10 ("Given Pounce USA's knowledge of its violations and continued use of Cadence's software, there is no adequate remedy at law to address the ongoing damage and irreparable harm."). The balance of equities and the public interest both plainly support remedying that injustice. Hermann Int'l, Inc. v. Hermann Int'l Europe, No. 1:17-cv-00073, 2021 WL 861712, at *22 (W.D.N.C. Mar. 8, 2021) ("By virtue of the Defendants' default, the Defendants have not identified any harms they might suffer as a result of the issuance of a permanent injunction," and of course infringers "have no cognizable right to conduct their business with the unlawful use of the Plaintiffs' intellectual property."); EMI Apr. Music Inc. v. Rodriguez, 691 F. Supp. 2d 632, 635 (M.D.N.C. 2010) (explaining that the public has a strong interest in protecting intellectual property rights).

Thus, the Court **ORDERS** Defendant Tammy Jernigan to return the manuscripts described in this action and **DISCONTINUE** any and all efforts to market or profit from these works upon receipt of this Order.

**CONCLUSION**

For these reasons, Plaintiff's motion for default judgment, dkt. no. 23, is **GRANTED**. Defendant Tammy Jernigan is hereby **ORDERED** to pay $100 in nominal damages and $10,000 in statutory damages to Plaintiff, and to return the subject manuscripts and discontinue any and all efforts to market or profit from these works. The Clerk is **DIRECTED** to mail a copy of this Order to Defendant Tammy Jernigan at her last known address. The Clerk is further **DIRECTED** to **CLOSE** this case.

**SO ORDERED** this 22nd day of September, 2022.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA